UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAREY GALLERSON,

    Plaintiff,

  v.

BNSF RAILWAY COMPANY,

    Defendant.

CASE NO. C15-5821 BHS

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S TERMINATION CLAIM AND STAYING REMAINNG CLAIMS

This matter comes before the Court on Defendant BNSF Railway Company's ("BNSF") motion to dismiss or stay (Dkt. 13). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On October 22, 2015, Plaintiff Karey Gallerson ("Gallerson") sued BNSF in Pierce County Superior Court. Dkt. 1 ¶ 1. Gallerson asserts claims for hostile work environment, disparate treatment, unlawful retaliation, and wrongful discharge under the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq*. Dkt. 1-2

ORDER - 1

("Comp.") ¶¶ 6.1–6.4. Gallerson also alleges a claim for negligent infliction of emotional distress ("NIED"). *Id.* ¶ 6.5. BNSF removed the case to this Court under 28 U.S.C. § 1332. Dkt. 1 ¶ 3.

On November 19, 2015, BNSF moved to dismiss or stay. Dkt. 13. On December 7, 2015, Gallerson responded. Dkt. 16. On December 11, 2015, BNSF replied. Dkt. 17.

On January 28, 2016, the Court requested additional briefing and renoted BNSF's motion. Dkt. 18. On February 4, 2016, BNSF filed its opening brief. Dkt. 19. On February 10, 2016, Gallerson responded. Dkt. 20. On February 12, 2016, BNSF replied. Dkt. 22.

## II. FACTUAL BACKGROUND

Gallerson began working for BNSF, a railroad company, in July 2001. Comp. ¶ 4.2, 5.1. Gallerson is an African American male who has brought two prior lawsuits for racial discrimination against BNSF. *Id.* ¶ 5.2. Gallerson's last discrimination suit against BNSF settled in January 2014. *Id.* Following the settlement of his discrimination suit, Gallerson began to receive less desirable work and disdainful treatment from his coworkers. *Id.* ¶ 5.3.

On December 24, 2013, Gallerson was involved in a domestic dispute and charged with several felonies. *Id.* ¶ 5.5. In February 2014, Gallerson slipped and broke his thumb at work. *Id.* ¶ 5.4. Gallerson was on medical leave for five months. *Id.* While on medical leave, Gallerson was involved in another domestic dispute for which he received additional criminal charges. *Id.* ¶ 5.5.

Gallerson returned to work in August 2014. *Id.* ¶ 5.6. On January 21, 2015, Gallerson notified BNSF that he was being convicted of a felony. *Id.* The following day, Gallerson informed BNSF that he had pled guilty to two felonies: residential burglary and malicious mischief. *Id.*

On March 5, 2015, Gallerson told his supervisor that he was going to be sentenced the next day. *Id.* ¶ 5.8. Gallerson was subsequently sentenced to ten months of home monitoring, with permission to go to work. *Id.*

On March 9, 2015, BNSF notified Gallerson that it had scheduled an investigation into Gallerson's convictions for March 16, 2015. *Id.* ¶ 5.9. The investigation was later postponed to March 18, 2015. *Id.* ¶ 5.10. Under BNSF's collective bargaining agreement ("CBA"), BNSF had fifteen days from the date of the occurrence or information to hold an investigation and thirty days to render a decision after the investigation. *Id.* ¶ 5.11. Pursuant to BNSF policy, if an investigation is not held or a decision is not rendered within the time limits, "the charges against the employee shall be considered as having been dismissed." *Id.*

On April 15, 2015, Gallerson was terminated for violating BNSF's Maintenance of Way Operating Rules. *Id.* ¶ 5.13. Gallerson timely appealed BNSF's decision. *Id.* ¶ 5.17. Pursuant to BNSF policy, BNSF had sixty days to respond to Gallerson's appeal. *Id.* Although BNSF failed to respond, Gallerson's termination was upheld. *Id.* During this time, Andrew Dube ("Dube"), a Caucasian male who worked for BNSF, appealed his termination. *Id.* BNSF also failed to respond to Dube's appeal. *Id.* Dube's termination, however, was overturned and dismissed due to BNSF's failure to respond. *Id.*

## III. DISCUSSION

BNSF seeks to dismiss Gallerson's claims for lack of subject matter jurisdiction,[1] arguing Gallerson's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*. Dkt. 13.

**A.     Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

**B.     Railway Labor Act**

The RLA governs labor-management relations in the railroad industry.[2] *See* 45 U.S.C. §§ 181–88; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). "[T]o promote stability in labor-management relations," the RLA established a "mandatory arbitral mechanism" for two types of disputes: major disputes and minor disputes. *Norris*, 512 U.S. at 252. "Major disputes" involve "the formation of collective

---

[1] BNSF also argues dismissal is appropriate under Rule 12(b)(6). Dkt. 13 at 1. The only issue presented in BNSF's motion is whether the RLA preempts Gallerson's claims. *See id.* Because BNSF's preemption arguments concern the lack of subject matter jurisdiction rather than the failure to state a claim, BNSF's preemption arguments should be analyzed under Rule 12(b)(1).

[2] The RLA was extended to the airline industry in 1936. *Norris*, 512 U.S. at 248.

bargaining agreements or efforts to secure them." *Id.* "Minor disputes," on the other hand, concern "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Id.* at 253. Put another way, "major disputes seek to create contractual rights, minor disputes to enforce them." *Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302 (1989).

The RLA preempts state law claims that constitute minor disputes. *Norris*, 512 U.S. at 253. To determine whether a state law claim is preempted by the RLA, the Court applies "the preemption test used in cases under the Labor Management Relations Act." *Espinal v. Nw. Airlines*, 90 F.3d 1452, 1456 (9th Cir. 1996). First, the Court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right arises solely from the CBA, then the claim is preempted. *Id.* "If, however, the right exists independently of the CBA, [the Court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)). "If such dependence exists, then the claim is preempted." *Id.* A claim is "substantially dependent" on the CBA when the Court must "interpret," rather than "look to," the CBA. *Id.* at 1060.

**C.   Preemption**

BNSF contends Gallerson's claims constitute "minor disputes" that are preempted by the RLA. Dkt. 13 at 9. Gallerson, in turn, argues his claims do not require the Court to interpret the CBA. Dkt. 16 at 1. As the party asserting preemption, BNSF bears the

burden of proving it applies. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995).

With regard to the first step of the preemption test, Gallerson's claims arise from rights conferred by state law. *See* RCW 49.60.030; *Snyder v. Med. Serv. Corp. of East. Wash.*, 98 Wn. App. 315, 323 (1999). As for the second step, the Court finds that Gallerson's termination claim substantially depends on the CBA. Gallerson premises his termination claim on BNSF's alleged failure to comply with various procedural requirements of the CBA. *See* Comp. ¶¶ 5.17–5.18. For example, Gallerson alleges he was treated differently than a Caucasian male who succeeded in overturning his termination because BNSF did not follow the timelines and procedures set forth in the CBA. *Id.* ¶ 5.17. As BNSF has pointed out, several terms in the CBA will need to be interpreted in order to resolve Gallerson's termination claim. *See* Dkt. 13 at 9–11. For these reasons, the Court concludes that Gallerson's termination claim constitutes a minor dispute that is preempted by the RLA.

Gallerson's remaining claims, however, are premised on other adverse employment actions—such as unfavorable work assignments and a hostile work environment—that do not implicate the CBA. *See* Comp. ¶ 5.3. Although these claims should not be dismissed as preempted by the RLA, the outcome of these claims will nevertheless depend substantially, though not completely, upon the arbitration of Gallerson's termination claim. If Gallerson is correct in his contentions and theories, he would likely be reinstated and awarded back pay by the arbitrator. While Gallerson may be able to obtain additional remedies under some of his remaining state law claims in this

Court, this case can be substantially streamlined following arbitration. The Court therefore finds that Gallerson's remaining claims should be stayed pending the arbitration of his termination claim. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("A district court has discretionary power to stay proceedings in its own court.").

## IV. ORDER

Therefore, it is hereby **ORDERED** that BNSF's motion to dismiss or stay (Dkt. 13) is **GRANTED**. Gallerson's termination claim is **DISMISSED** as preempted by the RLA. Gallerson's remaining claims are **STAYED** pending the completion of arbitration. The Clerk shall administratively close this case until a motion to reopen is filed.

Dated this 29th day of February, 2016.

BENJAMIN H. SETTLE
United States District Judge